IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | : |
| | : Chapter 11 |
| THE MAJESTIC STAR CASINO, LLC, et al., | : Bankr. Case No. 09-14136-KG |
| | : (Jointly Administered) |
| Debtors. | : |
| | : |
| TAX ASSESSOR FOR LAKE COUNTY, INDIANA, | : |
| | : |
| Appellant, | : |
| | : |
| v. | : Civ. No. 11-1060-LPS |
| | : |
| MAJESTIC STAR CASINO, LLC, et al., | : |
| | : |
| Appellees. | : |

## MEMORANDUM ORDER

At Wilmington this **10th** day of **December, 2013**, this matter coming before the Court upon the appeal (the "Appeal") (D.I. 1) of the Tax Assessor for Lake County, Indiana ("Lake County") from the (i) Findings of Fact and Conclusions of Law, dated September 13, 2011 (the "FFCL"), and (ii) Final Order Establishing the Debtors' Property Tax Liability with Respect to the Vessels Pursuant to the Motion of Lake County, Indiana for Allowance of Claims and Determination of Real Property Assessment and Tax Liability Pursuant to Sections 502, 505(a), and 105(a) of the Bankruptcy Code, dated September 20, 2011 (the "Order"), entered by the Honorable Kevin Gross, U.S.B.J., and having considered the parties' papers submitted in connection therewith, along with the arguments presented by the parties during a hearing before the undersigned judge on January 4, 2013 (*see* D.I. 24 ("Tr."));

IT IS HEREBY ORDERED that the Bankruptcy Court's FFCL is ADOPTED, its Order is

AFFIRMED, and the Appeal is DISMISSED, for the reasons that follow:

1.  Background.[1] The Majestic Star Casino, LLC and The Majestic Star Casino II, Inc. (collectively, "Majestic Star") had owned and operated two riverboat[2] gaming vessels moored in Indiana: the Majestic Star I ("MSC I") and the Majestic Star II ("MSC II" and, together with the MSC I, the "Vessels"). For tax years 2006-2010, Lake County nearly tripled the *ad valorem* real property assessments of the Vessels. Majestic Star filed appeals contesting the assessed values[3] of the Vessels.

2.  On November 23, 2009, before the tax appeals were heard in Indiana, The Majestic Star Casino, LLC and certain of its subsidiaries and affiliates (collectively, the "Debtors") filed for chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), Bankr. Case No. 09-14136-KG.

3.  Thereafter, in the bankruptcy case, Lake County filed a Motion for Allowance of Claim and Determination of Real Property Assessment and Tax Liability Pursuant to Sections 502, 505(a), and 105(a) of the Bankruptcy Code, seeking to uphold its real property assessments. Lake County requested that the Bankruptcy Court determine the real property tax liability of the Debtors on ten parcels of property located in Lake County, Indiana, but ultimately the parties

---

[1] The background of this case has been set forth at length by the Bankruptcy Court.

[2] As defined under Indiana law, a "riverboat" is a "self-propelled excursion boat" on which gambling is authorized. IND. CODE § 4-33-2-17(1). Riverboats are specifically classified as real property under Indiana assessment law, and are subject to Indiana's *ad valorem* real property taxes. IND. CODE § 6-1.1-1-15.

[3] Real property in Indiana is assessed at its "true tax value," as that term is defined by applicable statutes and the rules of the Indiana Department of Local Government Finance ("DLGF"). IND. CODE § 6-1.1-31-5(a); IND. CODE § 6-1.1-31-6(b)(6), (c). The "assessed value" of real property is equal to its "true tax value." IND. CODE § 6-1.1-3(a)(2).

agreed to limit the proceeding to a determination of the assessed value of just two of these parcels – specifically, the Vessels – as of the March 1, 2007 and March 1, 2010 assessment dates.

4. The Bankruptcy Court held a three-day evidentiary hearing in May, 2011, during which seven witnesses testified and numerous exhibits were introduced. Closing arguments were heard in June 2011. After also receiving written submissions, the Bankruptcy Court found that the Debtors properly interpreted and applied Indiana law in valuing the Vessels. Specifically, the Bankruptcy Court "concluded on the bases of the facts and law that the County did not meet its burden of impeaching or rebutting the affirmative opinion of value offered by the Debtors," further finding that "[t]he evidence clearly, precisely and overwhelmingly establishe[d] that [the] opinion [of Debtor's expert, Mr. Robert Herman of Duff & Phelps, LLC] as to the true tax value[4] of the Vessels [wa]s reliable. The evidence also establishe[d] that the opinions of value

---

[4]Section 6-1.1-4-39.5 of the Indiana Code (the "Riverboat Valuation Statute"), applicable here, prescribes how the true tax value of riverboats (referred to in the statutes as "qualified real property") is to be determined:

> [T]he true tax value of qualified real property is the lowest valuation determined by applying each of the following appraisal approaches:
>
> (1) Cost approach that includes an estimated reproduction or replacement cost of buildings and land improvements as of the date of valuation together with estimates of the losses in value that have taken place due to wear and tear, design and plan, or neighborhood influences using base prices determined under 50 IAC 2.3 and associated guidelines published by the department.
>
> (2) Sales comparison approach, using data for generally comparable property, excluding values attributable to licenses, fees, or personal property, as determined under 50 IAC 4.2.

offered by the County – through both [Lake County experts, Mr. Frank Kelly, the President of Nexus Group, and Ms. Nina Owen of CB Richard Ellis[5]] – were not reliable and the County failed to meet its burden." (FFCL at 96)

5.      Majestic Star's proposed assessed valuations – which were adopted by the

---

> (3) Income capitalization approach, using an applicable capitalization method and appropriate capitalization rates that are developed and used in computations that lead to an indication of value commensurate with the risks for the subject property use.

IND. CODE § 6-1.1-4-39.5(b).

In addition to the Riverboat Valuation Statute, there are generally applicable property valuation and assessment rules promulgated by the DLGF. As the Bankruptcy Court noted:

> The principal source of the DLGF's rules and guidance are the 2002 Real Property Assessment Manual (the "Manual") and the Real Property Assessment Guidelines for 2002 - Version A (the "Guidelines"). Both the Manual and Guidelines were in effect and must be applied subject to the Indiana Code (including the Riverboat Valuation Statute) and decisions of the Indiana courts and the Indiana Board of Tax Review ("IBTR"), for all the assessment dates at issue in this proceeding. The Manual and Guidelines are incorporated by reference in the Indiana Administrative Code. 50 IND. ADMIN. CODE tit. 50, § 2.3-1-2.

(FFCL at 9) Additionally, "[t]he DLGF's general rules for determining 'true tax value' are published in the Manual. According to the Manual, 'true tax value' means 'market value-in-use of a property for its current use, as reflected by the utility received by the owner or a similar user, from the property.'" (*Id.*; *see also* D.I. 6 at 8, 18) Further, "[t]o determine true tax value, the Manual specifically endorses the use of three approaches: the cost approach, the sales comparison approach, and the income capitalization approach," all three of which, "when properly processed, should produce approximately the same estimate of value." (FFCL at 9; *see also* D.I. 6 at 24)

---

[5]In addition to Lake County's other expert witnesses, the County retained Suzanne Mellen, a Senior Managing Director with HVS Gaming Services, as a rebuttal expert.

4

Bankruptcy Court on September 13, 2011 – were: (i) $6,290,000 for MSC I and $5,580,000 for MSC II for the March 1, 2007 assessment date; and (ii) $3,500,000 for MSC I and $3,200,000 for MSC II for the March 1, 2010 assessment date. (*See* FFCL at 96)

6. Lake County filed a Notice of Appeal of the FFCL and Order with the Bankruptcy Court on September 26, 2011 (the "Notice of Appeal"), asserting the Bankruptcy Court erred in myriad respects. (*See* D.I. 1) The Notice of Appeal was entered on the docket of this Court on November 1, 2011. (D.I. 4)

7. In its appeal, Lake County observes that "the [Bankruptcy] Court-adopted values are dramatically less than the 2005 assessments on which taxes were paid," and further notes that the Order "triggered refunds that Lake County and its constituent governments will be required to pay to Majestic Star in the principal and interest amounts of over $7,300,000." (D.I. 6 at 6) More particularly, Lake County contends that in "adopting Majestic Star's proposed findings and conclusions almost verbatim," the Bankruptcy Court violated Indiana law "by failing to consider probative evidence presented by the Lake County Assessor on direct and cross-examination." (D.I. 2 at 10; *see also, e.g.,* D.I. 6 at 1-2, 5, 27-32) Lake County further argues that the Bankruptcy Court erred in "failing to follow Indiana's market-value-in-use standard, including the improper reliance on sales of closed riverboat casinos which are special-purpose properties[6]

---

[6]According to Lake County, the Guidelines define "special-purpose properties" as:

> A limited-market property with unique physical design, special construction materials, or a layout that restricts its utility to the use for which it was built. . . . Typically, this would include industrial properties designed for a particular industry or use, steel mills, or specialized types of manufacturing facilities.

(D.I. 6 at 9) (citing LCX 17, App. F, p. 17 (Appx. 257))

under Indiana law." (D.I. 2 at 10; *see also e.g.,* D.I. 6 at 1-2, 8-10, 18-23) Additionally, in Lake County's view, the Bankruptcy Court mistakenly "rel[ied] on [Mr. Herman's] appraisal when such appraisal, among other things, (a) failed to undertake an income approach, as required by [Indiana's Riverboat Valuation Statute], and (b) incorrectly calculated abnormal obsolescence under the cost approach as a result of such failure." (D.I. 2 at 10; *see also* D.I. 6 at 1-2, 11-13, 24-29)

8. In response, the Debtors emphasize the thoroughness of the Bankruptcy Court's approach. (*See generally* D.I. 9) The care with which the Bankruptcy Court proceeded is evident, in the view of the Debtors, from the lengthy written submissions it required of the parties, as well as the three-day evidentiary hearing it held in May 2011, at which it observed the testimony of seven witnesses, including five experts, and admitted into evidence numerous exhibits. All of this resulted in the issuance of a 97-page FFCL and corresponding Order in September 2011. The Debtors contend that the Bankruptcy Court heard and considered all of Lake County's arguments, but did not find them to be persuasive.

9. <u>Standard of review</u>. Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158. Pursuant to § 158(a), district courts have mandatory jurisdiction to hear appeals "from final judgments, orders, and decrees" and discretionary jurisdiction over appeals "from other interlocutory orders and decrees." 28 U.S.C. § 158(a)(1) and (3). On appeal, the Court reviews the Bankruptcy Court's findings of fact for clear error and exercises plenary review over questions of law. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm

conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). The Court must "break down mixed questions of law and fact, applying the appropriate standard to each component." *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992).

10. <u>Analysis</u>. Lake County contends the Bankruptcy Court committed several errors. (*See generally* D.I. 6, 16) The Court disagrees.

11. As an initial matter, the Court rejects Lake County's arguments raising concern with *how* the Bankruptcy Court prepared the FFCL and Order. Any resemblance between the product issued by the Bankruptcy Court and the submissions of the parties is irrelevant. What matters is whether the Bankruptcy Court (or, for that matter, this Court) meaningfully considered the evidence and the law, and there is every indication that the Bankruptcy Court did precisely that. As the Third Circuit has stated: "A district court's verbatim adoption of findings proposed by one party is not, of itself, error. . . [O]ur review is only to determine whether the findings are supported by the evidence of record. If they are, then their source of origin is of no moment to the resolution of this appeal." *Hassine v. Jeffes*, 846 F. 2d 169, 172 n.1 (3d Cir. 1988); *see also Maloblocki v. Maloblocki*, 646 N.E.2d 358, 361 (Ind. Ct. App. 1995) ("[T]here is no error where the trial court requests the parties to submit proposed findings and then adopts verbatim one party's proposed findings over those of the other party."). Appellants acknowledge that their contention that the Bankruptcy Court failed to consider their evidence and arguments is based on nothing more than speculation arising from the format of the FFCL and Order. (*See* Tr. at 14) The Court is unpersuaded by Appellants' attack, particularly in light of the thoroughness of the Bankruptcy Court's work product and the length of the proceedings before it. Plainly, the

7

Bankruptcy Court simply was not convinced that Lake County satisfied its "burden of impeaching or rebutting the affirmative opinion of value offered by the Debtors." (FFCL at 96; *see also id.* at 90; D.I. 9 at 3-4)

12. Turning to the substance of Appellant's arguments, the Court is not persuaded that the Bankruptcy Court misapplied Indiana's market value-in-use standard in valuing Majestic Star's riverboat casinos. Lake County contends that the Bankruptcy Court erred in determining value based on sales of closed riverboats, as "sale prices of riverboat casinos not in use are not representative of the subject riverboats' market value-in-use because they are special purpose properties which were in use on the valuation dates." (D.I. 6 at 22; *see also* Tr. at 20-21) The Debtors respond by relying (as the Bankruptcy Court did) on two decisions – *Stinson v. Trimas Fasteners*, 923 N.E.2d 496 (Ind. Tax Ct. 2010), and *Meijer Stores Ltd. Partnership v. Smith*, 926 N.E.2d 1134, 1137 (Ind. Tax Ct. 2010) – for the proposition that "what matters for purposes of determining 'market value-in-use' is not whether the sale comparables were in business and operating on the date of sale, but whether the properties' 'use' – both before and after sale – was generally the same (i.e., retail use, manufacturing use, gaming use)." (D.I. 9 at 36) The Court agrees with the Debtors. Here, the comparables were in the same use both before and after their sales, just as was true for the Vessels. Lake County's attempt to distinguish *Trimas* and *Meijer* – primarily on the grounds that the Vessels, unlike the property at issue in those cases, are special purpose properties (*see* Tr. at 69; D.I. 16 at 9) – is unavailing. While *Trimas* states that "*[g]enerally*, a sale will not be representative of utility with respect to special-purpose property," 923 N.E.2d at 501 n.10 (emphasis added), here the Court has failed – as Appellees insisted would occur – to uncover "anything in the Bankruptcy Court's finding of fact or conclusions of law on

8

whether this [i.e., the Vessels] is a special purpose property or not." (Tr. at 64-65; *see also* D.I. 9 at 38-39) Notably, none of the appraisal witnesses noted in their reports that the Vessels were special purposes properties. (*See* Tr. at 74-76)[7]

13. Next, Lake County argues that the appraisals offered by the Debtors and relied on by the Bankruptcy Court were flawed and insufficient. However, as Appellants concede, "the Bankruptcy Court decision as to which appraisals are more probative, deserves the highest degree of deference from this Court." (Tr. at 12-13) The Court finds no clear error was committed by the Bankruptcy Court in this regard.

14. For instance, while Lake County criticizes the Debtor's expert, Mr. Herman, from drawing on comparables located in markets beyond the immediate vicinity of Lake County, Lake County's expert did the same. (*See* Tr. at 78-79) As for Appellant's assertion that Mr. Herman's reports failed to perform the income approach,[8] again it was not clear error to rely on his analysis, particularly as "no Indiana Board or Court has ever concluded that the authority to apply all three approaches renders them mandatory." (Tr. at 80) As to criticism that Mr. Herman invoked the Jurisdictional Exception Rule to Uniform Standards for Professional Appraisal Practice ("USPAP"), this was not clear error, as Indiana's Riverboat Valuation Statute applies (*see* Tr. at 70, 85) and even one of Lake County's experts "agreed that if the Riverboat Valuation Statute

---

[7]Furthermore, there is no evidence in the record as to how the valuation would be affected if the Vessels were to be viewed as special purpose properties.

[8]Lake County argues that "[i]n considering the riverboats' allocated income to determine the value of the riverboats' ability to produce revenue, Lake County followed the value-in-use definition;" however, "[i]n failing to consider their riverboats' income, Majestic Star and the Order adopted by the Bankruptcy Court did not follow the Indiana assessment standard." (D.I. 16 at 4)

9

applied, it was appropriate to take the jurisdictional exception" (*id.* at 85). With respect to the Bankruptcy Court's finding that Mr. Herman's "quantification of obsolescence was credible and reasonable," the Court finds no clear error in the Bankruptcy Court's finding that Lake County "offered no evidence to rebut Mr. Herman's conclusion that the Vessels suffered from obsolescence, nor did the County offer any evidence suggesting a different quantification of obsolescence." (FFCL at 34-35; *see also* Tr. at 51)

15. In sum, after applying the applicable standards of review to the evidence and arguments presented by the parties, the Court, like the Bankruptcy Court, is unpersuaded by Lake County. Accordingly, the Bankruptcy Court's FFCL is adopted, its Order is affirmed, and the Appeal is dismissed. The Clerk of Court is directed to CLOSE this case.

_____
UNITED STATES DISTRICT JUDGE